FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:17cr 254T36 AEP

DEAN MORGAN 18 U.S.C. § 1956(h)

# INFORMATION

The Acting United States Attorney charges:

## COUNT ONE
## (Conspiracy to Commit Money Laundering – 18 U.S.C. § 1956(h))

### A. Introduction

At times material to this Information:

1. DEAN MORGAN ("MORGAN") was a resident of Dallas, Texas and worked in insurance and real estate.

2. Muhammad Naji ("Naji") was a resident of Hillsborough County, Florida who opened accounts at national banks and recruited others to do so for him.

3. Michelle Ann Scalley ("Scalley") was a resident of Hillsborough County, Florida, who was recruited by, and worked with, Naji to open bank accounts.

**B** **The Conspiracy**

4. Beginning on an unknown date, but at least as early as in or about June 2014, and continuing until at least in or about July 2016, in the Middle District of Florida and elsewhere, the defendant,

DEAN MORGAN,

did knowingly and willfully combine, conspire, and agree with Naji, Scalley and other persons, both known and unknown to the Acting United States Attorney, to commit offenses against the United States, in violation of Title 18, United States Code, Section 1956, that is:

a. to conduct a financial transaction affecting interstate and foreign commerce, namely, to transport, transmit, and transfer monetary instruments and funds which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, with the intent to promote the carrying on of said specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

b. to conduct a financial transaction affecting interstate and foreign commerce, namely, to transport, transmit, and transfer monetary instruments and funds which involved the proceeds of a specified unlawful

activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

c. to conduct a financial transaction affecting interstate and foreign commerce, namely, to transport, transmit, and transfer monetary instruments and funds which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under Federal law, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

**C. <u>Manner and Means</u>**

5. The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

6. It was a part of the conspiracy that the conspirators would and did utilize interstate wire communications to defraud individuals and businesses across

the United States, including in the Middle District of Florida, and obtain funds from them by means of materially false and fraudulent pretenses and representations;

7. It was further part of the conspiracy that conspirators would and did incorporate shell companies with fictitious names and then open, and cause to be opened, bank accounts in the names of those shell companies at various federally-insured financial institutions in the Middle District of Florida and elsewhere. These accounts were opened exclusively for the purpose of receiving, transmitting, or otherwise obtaining the proceeds of specified unlawful activity;

8. It was further part of the conspiracy that conspirators would and did contact victims, via email and telephone, for the purported purpose of seeking assistance with transactional dealings and business matters. In truth and in fact, however, the purpose of those contacts was to gain access to those victims' bank accounts;

9. It was further part of the conspiracy that conspirators would and did acquire cashier's checks from various financial institutions;

10. It was further part of the conspiracy that conspirators would and did use those cashier's checks to forge new ones made payable to victims for tens to hundreds of thousands of dollars;

11. It was further part of the conspiracy that conspirators would and did send, and cause to be sent, via the United Parcel Service, Federal Express, and the United States Postal Service, forged cashier's checks to the victims in order to carry out the supposed business transactions;

12. It was further part of the conspiracy that conspirators would and did instruct victims to deposit the fraudulent cashier's checks into their bank accounts, and then promptly wire all or part of those funds across state lines into the bank accounts of shell companies and other entities created and controlled by conspirators;

13. It was further part of the conspiracy that conspirators would and did fraudulently obtain, and attempt to obtain, proceeds by "spoofing" email accounts of legitimate businesses—that is, by creating and using email accounts that appeared to originate from authorized users within those businesses, but were wholly fraudulent—and, thereby, inserted themselves into business transactions with, and on behalf of, those businesses in order to authorize, and cause to be authorized, wire transfers of the businesses' funds to conspirators;

14. It was further part of the conspiracy that conspirators would and did fraudulently obtain, and attempt to obtain, proceeds from email intrusion schemes wherein conspirators unlawfully hacked into the email accounts of individuals and businesses, fraudulently assumed the identities of those account holders, and

authorized, and caused to be authorized, wire transfers of said account holders' funds to conspirators;

15. It was further part of the conspiracy that conspirators would and did fraudulently obtain, and attempt to obtain, proceeds from romance schemes wherein conspirators targeted users of internet dating and social networking sites, feigned romantic relationships with those users, and created fictitious scenarios in which said users needed to wire funds to conspirators in order to further advance and cultivate these relationships;

16. It was further part of the conspiracy that conspirators would and did wire and send, and cause to be wired and sent, the proceeds that they had fraudulently obtained from victims to multiple financial institutions, including financial institutions located overseas, in order to promote the carrying on of the aforementioned fraud schemes;

17. It was further part of the conspiracy that conspirators would and did wire and send, and cause to be wired and sent, the proceeds that they had fraudulently obtained from victims to multiple financial institutions, including financial institutions located overseas, in order to conceal and disguise the source of, and to hinder any efforts to locate, said proceeds;

18. It was further part of the conspiracy that conspirators would and did withdraw and transfer fraudulently-obtained proceeds that had been deposited into

their bank accounts in amounts under $10,000, in order to avoid filing Currency Transaction Reports that were required of United States financial institutions under Federal law;

19. It was further part of the conspiracy that conspirators would and did share in the proceeds of the fraud schemes, usually receiving a set percentage of the proceeds that they received, withdrew, handled and transferred; and

20. It was further part of the conspiracy that conspirators would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE

1. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

2. From his engagement in any or all of the violations alleged in Count One, the defendant,

DEAN MORGAN,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense and any property traceable to such property.

3. The assets to be forfeited include, but are not limited to, a forfeiture money judgment in the amount of at least $445,677.68, representing the amount of proceeds obtained from the violations of Title 18, United States Code, Section 1956(h).

4. If any of the forfeitable assets described above, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

W. STEPHEN MULDROW
Acting United States Attorney

By: ______________________
Patrick D. Scruggs
Assistant United States Attorney

By: ______________________
Simon A. Gaugush
Assistant United States Attorney
Chief, Economic Crimes Section